869 So.2d 760 (2004)
FLORIDA DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellant,
v.
Jo Lynn McKIM, Appellee.
No. 1D03-2092.
District Court of Appeal of Florida, First District.
April 13, 2004.
*761 Lucy Goddard-Teel, District Legal Counsel, Department of Children and Family Services, Gainesville, for appellant.
Bennett A. Hutson, of Davis & Hutson, L.C., Gainesville, for appellee.
PER CURIAM.
The Florida Department of Children and Family Services (Department) appeals from a final judgment denying its request for adult protective services for the appellee, Jo Lynn McKim. The Department asserts that the trial court erred as a matter of law in determining that it had no statutory authority to order protective services under section 415.1051(1), Florida Statutes, of the Adult Protective Services Act, even though the court found by clear and convincing evidence that appellee lacks capacity to consent to protective services and is a vulnerable adult in need of services. We affirm.
Pursuant to section 415.1051(1), Florida Statutes, the Department filed a petition for an order authorizing adult protective services for the appellee, alleging that the 39-year old was a vulnerable adult in need of protective services because of self neglect, and to maintain and ensure her health, safety, and well-being. The Department's petition alleged that the appellee had difficulty walking; she required assistance for dressing, bathing, grooming, and toileting; she had a history of hospitalization, alcohol abuse, falling and being unable to get up, weakness, failure to eat, dehydration, incontinence, skin breakdown, and confusion; and she suffered from a potassium deficiency and hypothyroidism, requiring several prescription medications which she was unwilling or unable to manage as prescribed. The petition also stated that the appellee was found in her home covered in feces, and that she had not eaten or taken liquids for multiple days, resulting in her hospitalization. The petition alleged that the appellee lacked capacity to consent to the provision of protective services based on the following facts: the respondent had been diagnosed with cognitive impairment, specifically related to memory, which prevents her from making informed decisions regarding her care; the respondent has impaired attention and concentration, an inability to give a history due to memory impairments, and impaired insight and judgment.
At the hearing on the petition, the Department presented evidence to support the allegations made in the petition through the testimony of witnesses, including the appellee's father, her physician, and the social worker from the hospital. The medical testimony and that of the social worker established that the appellee required 24/7 care, and it would not be safe for her to return to her home.
The trial court found by clear and convincing evidence
[The appellee] lacks the capacity to consent to protective services and meets the statutory definition of a "vulnerable adult in need of services" as defined in § 415.102(27), Fla. Stat., because of self neglect.
Nevertheless, the court found as a matter of law that it did not have authority to order protective services in the form of involuntary placement in a licensed facility because the statutory definition of "neglect" requires that "neglect" have occurred at the hand of a caregiver, and there was insufficient evidence of caregiver neglect.
The Department urges us to consider overall statutory intent and allow it to provide adult protective services for appellee, a party clearly in need of such services. While the Department's view in this case may be supported by sound public *762 policy consideration, we are constrained as the trial judge was by the unambiguous language of the statute: adult protective services may only be provided to a non-consenting adult if such adult is subject to abuse, exploitation, or neglect of another person.
The supreme court stated the duty of the courts when asked to construe unambiguous statutory language in State v. Jett, 626 So.2d 691 (Fla.1993):
It is a settled rule of statutory construction that unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language. While the dissent's view below has much to commend it, we find that the decision whether or not to engraft that view into the Florida Statutes is for the legislature. We trust that if the legislature did not intend the result mandated by the statute's plain language, the legislature itself will amend the statute at the next opportunity.
Id. at 692.
Thus, where a department's construction of a statute is inconsistent with clear statutory language it must be rejected, notwithstanding how laudable the goals of that department. See Cleveland v. Fla. Dep't of Children & Families, 868 So.2d 1227, 1229 (Fla. 1st DCA, 2004).
Section 415.1051, Florida Statutes, authorizes the court to order protective services for a vulnerable adult who is being "abused, neglected, or exploited." As the trial judge held, section 415.1051 applies exclusively to a vulnerable adult who is being mistreated by another person. This limitation is clear from the statutory definitions of abuse, neglect, and exploitation. "Abuse" is defined as "any willful act or threatened act by a caregiver that causes or is likely to cause significant impairment to a vulnerable adult's physical, mental, or emotional health." § 415.102(1), Fla. Stat. (emphasis added). Likewise, "neglect" is defined as "the failure or omission on the part of the caregiver to provide the care, supervision, and services necessary to maintain the physical and mental health of the vulnerable adult." § 415.102(15), Fla. Stat. (emphasis added). The theme is repeated in the definition of "exploitation," which is limited to a situation in which one person is attempting to take advantage of another for personal reasons or financial gain. § 415.102(7)(a), Fla. Stat.
The Department argues that the first two sentences of section 415.102(15), define neglect as an omission or failure by a caregiver, but concludes that the statute is ambiguous, because the third sentence of the definition does not use the term "caregiver." The problem with this analysis is that the third sentence necessarily refers to the first two. It cannot be read in isolation as if it created a new and different kind of neglect. When the Legislature said in the third sentence that neglect is "repeated conduct or a single incident of carelessness," it was merely defining the kind of omission that can be regarded as neglect. This sentence does not change the subject entirely by introducing for the first time the concept of self-neglect.
The Department also relies on the fact that the definition of "vulnerable adult in need of services" in section 415.102(27), is broad enough to include self-neglect. The phrase "vulnerable adult in need of services," however, is used in another part of the statute, which deals exclusively with services provided with the consent of the adult. This phrase is used only in section 415.105, which states:
(1) PROTECTIVE SERVICES WITH CONSENT.If the department determines through its investigation that a vulnerable adult demonstrates a need for protective services or protective supervision, *763 the department shall immediately provide, or arrange for the provision of, protective services or protective supervision, including in-home services, provided that the vulnerable adult consents. A vulnerable adult in need of services as defined in s. 415.102 shall be referred to the community care for disabled adult's program, or to the community care for the elderly program administered by the Department of Elder Affairs.
§ 415.105(1), Fla. Stat. (emphasis added). This section is the only part of Chapter 415 that uses the phrase "vulnerable adult in need of services." The significance of this fact is simply that the statute makes protective services available to adults who are in need of supervision, even if they have not been abused, neglected, or exploited by someone else. That does not lend support to the Department's argument, however, because the Department was not proceeding under this section of chapter 415.
Section 415.1051, Florida Statutes, which is at issue in this case, does not employ the phrase "vulnerable adult in need of services." Rather, it uses the phrase "vulnerable adult," which is defined separately in the statute. Unlike the definition of "vulnerable adult in need of services," the definition of "vulnerable adult" does not include the concept of self-neglect. Compare § 415.102(26), Fla. Stat. with § 415.102(27), Fla. Stat.
We therefore affirm.
WOLF, C.J., PADOVANO and POLSTON, JJ., concur.